IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JJK MINERAL COMPANY II, LLC, *a Pennsylvania Limited Liability Company*, <br>     Plaintiff, <br><br> v. <br><br> TODD MORRIS, ROBERT R. MORRIS, SHIELLA H. MORRIS, RITA K. MARTIN, DAVID M. MARTIN, MORRIS MACHINERY, LLC, *a Pennsylvania Limited Liability Company*, FAYE VENDEVENDER, EQT PRODUCTION COMPANY*, a Pennsylvania Corporation agent of* EQT CORPORATION, SUSAN L. ELLIOTT, CALVIN F. LINES, AVEREY A. LINES, RILEY W. LINES, RICHARD G. ODE, JOYCE ELAINE ODE, JUDITH C. BOILER, KAREN B. MCCLINTOCK, GERALD W. ODE, WAYNE P. ODE, CARSON R. ODE, GARY L. RODDY, MARGARET F. RODDY, RACHEL L. RODDY, ERIC S. RODDY, KARL C. SMITH, ELIZABETH S. JUDKINS, and DANIEL M. LINES, <br>     Defendants. | 2:20-cv-2025 <br><br> Judge Marilyn J. Horan |

**MEMORANDUM OPINION**

Presently before the Court is a Motion to Dismiss the above-captioned case involving property in Washington Township, Greene County, Pennsylvania. (ECF No. 76). Plaintiff, JJK Mineral Company II, LLC (JJK Mineral), brings a four-count Second Amended Complaint requesting a Declaratory Judgment that it owns a 46.235% interest in the property's oil and gas rights at Count I, a claim to Quiet Title for 46.235% of the property's oil and gas rights at Count II, an alternative claim for Unjust Enrichment at Count III, and a request for an Accounting at Count IV. (ECF No. 73). The corporate Defendant, EQT Production Company (EQT), filed a Motion to Dismiss JJK Mineral's Second Amended Complaint, alleging lack of subject matter

1

jurisdiction and failure to state a claim upon which relief can be granted. (ECF No. 76). The individual Defendants, the Morris Defendants, filed a Motion to Join EQT's Motion to Dismiss. (ECF No. 78).

On July 12, 2021, the parties stipulated to withdraw the portion of the Motion to Dismiss that challenged the Court's subject matter jurisdiction. (ECF No. 83). An oral argument on the remaining aspects of the Motion to Dismiss was held on July 28, 2021. (ECF No. 88). Following oral argument, counsel stipulated to submitting additional briefing in regard to the following two questions: "(1) In light of the South Penn Lease, what interest did the Meeks own when they prepared the June 14, 1897 royalty deed to George M. Swingle, and is it relevant to the Motion to Dismiss? and (2) If the June 14, 1897 royalty deed (the 'Royalty Deed') from the Meeks to George M. Swingle conveyed only a royalty interest rather than a fee interest in the oil and gas, was that royalty interest limited to the South Penn Lease so that it terminated or expired upon the termination or expiration of the South Penn Lease?" (ECF No. 91). Both JJK Mineral and EQT submitted timely supplemental briefing on the two stipulated issues. (ECF No. 93 & 94). The Morris Defendants filed a Motion to Join EQT's Supplemental Brief. (ECF No. 95).

For the reasons stated herein, the Morris Defendants' Motions to Join in EQT's Motion to Dismiss Plaintiff's Second Amended Complaint and to Join in EQT's Supplemental Brief will be granted. Additionally, the Defendants' Motion to Dismiss will be granted.

I. **Facts**

Prior to March 3, 1897, the Meeks owned a 236.173125-acre tract of property in fee simple absolute. (ECF No. 73, at ¶ 1). On March 3, 1897, Miles Meek and his wife, Mariah Meek, entered into an oil and gas lease with South Penn Oil Company, where they granted South Penn the right to drill, produce and sell oil and gas from their entire 236.173125-acre tract for a

term of ten years or for "as long after the commencement of operations as said premises are operated for the production of oil or gas and as much longer as the rent for failure to commence operations is paid and as long after the commencement of operations as said premises are operated for the production of oil and gas" (South Penn Lease).  (ECF Nos. 73, at ¶ 1; 73-3, at 2). After granting the South Penn Lease, the Meeks owned a 1/8 royalty interest in the oil produced and a $300 per year per well gas royalty for the duration of the lease.  (ECF No. 73-3, at 2).

Three months later, on June 14, 1897, the Meeks and George Swingle entered into an Article of Agreement titled, "Royalty Deed Miles Meek To George M. Swingle."  (ECF Nos. 73, at ¶ 2; 73-4, at 2).  The granting clause of the 1897 Royalty Deed reads as follows: "for the consideration of ($4000) dollars four thousand dollars in payment of five hundred dollars in cash the receipt of which is hereby acknowledged do bargain sell and set over unto George M. Swingle his heirs administrators.  All of his oil and gas rite being the full half of his eighth interest, one sixteenth royalty to have and hold for ever all of the undivided (1/16) one sixteenth royalty and gas rite."  (ECF No. 73-4, at 2).  The 1897 Royalty Deed scheduled George Swingle's consideration payments to coordinate with the drilling of wells and oil production.  (ECF No. 73-4, at 2).  Reference to the royalty is also made two additional times within the provisions establishing the schedule for consideration payments.  (ECF No. 73-4, at 2).

Through subsequent transfers and conveyances, JJK Mineral alleges that it has acquired 92.47% of the property's oil and gas mineral estate that was transferred to George Swingle by the 1897 Royalty Deed.  (ECF No. 73, at ¶ 207).  All oil and gas interests, other than any owned by George Swingle and assigns, are presently owned by the EQT and Morris Defendants.  (ECF No. 73, at ¶¶ 158-159).  The question presented is what property rights were transferred to George Swingle by the 1897 Royalty Deed?

## II. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions

cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining*, 615 F.3d at 175).

### III.   Discussion

In this Motion to Dismiss, EQT and the Morris Defendants argue that there is no ambiguity in the 1897 Royalty Deed. (ECF Nos. 86, at 2; 87, at 2). As such, by virtue of that instrument, the defense maintains that presently, JJK Mineral owns no interest in the property's oil and gas rights. (ECF No. 78, at 3). Based upon their position that JJK Mineral lacks any ownership interest, the Defendants move to dismiss JJK Mineral's Second Amended Complaint. (ECF Nos. 76 & 78). JJK Mineral, on the other hand, argues that it owns 46.235% of the property's oil and gas rights. (ECF No. 84, at 8-9). In support of this position, JJK Mineral argues that the 1897 Royalty Deed is ambiguous and that the Court should apply the Estate

Misconception Theory and allow for discovery and consideration of extrinsic evidence to properly interpret the intentions of the parties to said instrument.  (ECF No. 84, at 11-12).

Pennsylvania law recognizes distinct property interests in real estate.  *Snyder Bros., Inc. v. Peoples Natural Gas Co.*, 676 A.2d 1226, 1230 (Pa. Super. Ct. 1996).  A fee simple interest is the largest estate interest and implies absolute dominion.  *Id.*  Real estate interests relevant here include a present interest in fee simple, a present interest in fee simple determinable, and a future possibility of a reverter.  A present interest in fee simple is owned in the present without condition.  *Herr v. Herr*, 957 A.2d 1280, 1285 (Pa. Super. Ct. 2008).  A fee simple determinable interest is owned at present but is subject to termination upon the occurrence of specific events or circumstances.  *Id.*  A future possibility of a reverter, also known as reverter, is an interest which reverts to the grantor upon the occurrence of a specified circumstance or event.  *Snyder Bros.*, 676 A.2d at 1230.  Each of these interests in land is a separate and distinct interest, and each is subject to alienation.  *Herr*, 957 A.2d at 1285.

In addition to interests in real estate, Pennsylvania law recognizes three distinct estates in real estate: the surface estate, the mineral estate, and the right to subjacent or surface support.  *Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa. Super. Ct. 2005).  The three estates are severable.  *Id.*  A person who owns property in fee simple absolute can sever the mineral estate interest by conveying the mineral estate interest in fee simple absolute.  *See Snyder Bros.*, 676 A.2d at 1230.  Alternatively, a fee simple owner of minerals can sever the mineral estate and convey fee simple ownership of such mineral estate interest by virtue of an oil and gas lease.  *Id.*  Such oil and gas lease creates a fee simple determinable in the lessee and a possibility of reverter in the lessor.  *Id.*  Plaintiff best explains Pennsylvania law as regards oil and gas leases as follows:

> Pennsylvania recognizes that an oil and gas lease is actually a conveyance in fee simple of certain interests that make up the mineral estate. *See Snyder Bros., Inc. v. Peoples Nat. Gas Co.*, 450 Pa. Super. 371, 378, 676 A.2d 1226, 1230 (1996). However, the conveyance is not in perpetuity. Rather, the interest conveyed by a lessor to a lessee is classified as a "fee simple determinable." *Snyder Bros.*, 450 Pa. Super. at 378, 676 A.2d at 1230; *see also T.W. Phillips Gas & Oil Co. v. Jedlicka*, 615 Pa. 199, 209, 42 A.3d 261, 267 (2012). A lessee holds this fee simple determinable interest until certain conditions identified in the lease are met, such as the expiration of the term or the failure to produce oil and gas in paying quantities. When these conditions are satisfied, the lease terminates and the interest conveyed to the lessee automatically reverts to the lessor, who then regains complete ownership of the mineral estate. *Higbee Corp. v. Kennedy*, 286 Pa. Super. 101, 107, 428 A.2d 592, 595 (1981); *see also Brown v. Haight*, 435 Pa. 1, 18, 255 A.2d 508, 511 (1969).
>
> While the lessor does not own the interest conveyed under the lease during its term, the lessor nevertheless retains the right to regain possession of those interests at some point in the future. The lessor's interest is classified as a "possibility of reverter." *Snyder Bros.*, 450 Super. at 380 n.2, 676 A.2d at 1230 n.2. A possibility of reverter is a presently vested future interest. *See id.* In other words, the possibility of reverter is an interest that is vested in the holder and grants the holder an identifiable interest in a future estate. Possibilities of reverter may be devised and may be inherited, sold, and conveyed. *Graybill v. Manheim Cent. Sch. Dist.*, 175 Pa. Super. 415, 419, 106 A.2d 629, 631 (1954); *see also Higbee Corp.*, 286 Pa. Super. at 108, 428 A.2d at 595.

(ECF No. 84, at 13-14).

At its essence, once a lessor executes an oil and gas lease, the lessor presently owns a right in the royalties to be paid under the lease. *Snyder Bros.*, 676 A.2d at 1230 (citing *Smith v. Glen Alden Coal Co.*, 32 A.2d 227 (1943)). Royalty rights are personal property. *Id.* (citing *Smith*, 32 A.2d 227). The royalty interest entitles the lessor or his assignee to receive the royalty payments from the lessee or assignee as provided for under the terms and provisions of the oil and gas lease. *Smith*, 32 A.2d at 232-33. After entering into an oil and gas lease, the only remaining real property interest that the lessor owns in the minerals is the possibility of a reverter, as discussed above. *Herr*, 957 A.2d at 1285.

"When construing a deed, a court's primary object must be to ascertain and effectuate what the parties themselves intended . . . . The traditional rules of construction to determine that intention involve the following principals.  First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake.  We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used." *Consolidation Coal*, 875 A.2d at 326 (citation omitted).  When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined solely from the words in the deed. *Teacher v. Kijurina*, 76 A.2d 197, 200 (Pa. 1950).  If the language of a deed is "clear and unambiguous" nothing remains but for the court to apply the deed's language. *Ryan v. Hudak*, 185 A.2d 570, 572 (Pa. 1962) (citation omitted).

If a deed is ambiguous, all the attending circumstances at the time of execution should be considered to aid in determining the intent of the parties. *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 550 (Pa. Super. Ct. 2004) (citation omitted).  Where a deed is ambiguous, the intent of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and the surrounding circumstances. *Merrill v. Mfrs. Light & Heat Co.*, 185 A.2d 573, 575 (Pa. 1962).

Beyond Pennsylvania law jurisprudence, JJK Minerals argues for the application of the Estate Misconception Theory to support its claim for ownership of 46.235% of the oil and gas rights in the property at issue.  (ECF No. 84, at 11-12).  Said theory "explains that landowners around the turn of the twentieth century mistakenly used the fraction of one-eighth (1/8) to refer to the entirety of their interest once they had entered into an oil and gas lease, thereby intending

to convey both a royalty and a reversionary interest (the interest that returns to a lesser at the termination of a lease)." (ECF No. 84, at 11). In support of this position, JJK Mineral cites case law from Texas and Kansas. (ECF No. 84, at 11-12). The Estate Misconception Theory has never been applied in Pennsylvania to interpret an oil and gas mineral lease, and this Court declines to apply said Theory in this case. As such, the Estate Misconception Theory provides no support for JJK Mineral's claim of ownership.

Turning to the 1897 Royalty Deed in this case, the Court must ascertain the interests and estates that are at issue and assess whether the instrument is ambiguous. First, analysis of the March 3, 1897 Meeks to South Penn Oil Company Oil and Gas Lease (South Penn Lease) is necessary. Whatever rights the Meeks had to assign to George Swingle were as defined by the terms of the March 3, 1897 South Penn Lease.

In said conveyance, the Meeks conveyed to South Penn Oil Company a fee simple determinable interest in the oil and gas mineral estate from his tract of land. Following said conveyance, in relation to the oil and gas minerals, the Meeks owned only (1) a present personal property interest in the royalties as defined in said oil and gas lease, and (2) a future possibility of reverter interest in the oil and gas mineral estate. Thus, after entering into the lease with the Meeks, South Penn Oil Company owned a fee simple determinable interest in the oil and gas mineral estate. JJK Mineral's Brief in Opposition accurately explains the consequences of the South Penn Lease:

> Here, the Meeks acquired the subject property in fee simple absolute by 1892. (ECF No. 73, at ¶ 49). On March 3, 1897, the Meeks leased the subject oil and gas to the South Penn Oil Company (the "South Penn Lease"). (ECF No. 73, at ¶ 50; Exhibit 3 to Second Am. Compl.). Under the South Penn Lease, the Meeks granted South Penn the right to explore for and remove the oil and gas underlying the Swingle Tract. (See Ex. 3 to Second Am. Compl.). The Meeks retained not only the right to profit from the minerals produced from the property (i.e. a 1/8 royalty interest), but also the possibility of reverter in the interests conveyed to

> South Penn Oil. *See Snyder Bros.*, 450 Super. at 380 n.2, 676 A.2d at 1230 n.2. When the South Penn Lease expired, the interests of the mineral estate granted under the lease would revert back to the Meeks, who would then regain complete ownership and possession of the entire mineral estate. *Appeal of Baird*, 132 Pa. Super. 573, 583, 1 A.2d 485, 490 (1938), opinion adopted, 334 Pa. 410, 6 A.2d 306 (1939) ("When [the lessee] abandons a given piece of land his rights therein are at an end and the right to the oil and gas reverts to the land owner.").

(ECF No. 84, at 15). There is no dispute that the South Penn Lease terminated and is no longer in effect. (ECF No. 84, at 15-16).

As for the June 14, 1897 instrument, entitled "Royalty Deed," the Meeks executed an Article of Agreement which recites that, for the consideration of $4,000.00 to be paid in payments as set forth therein, the Meeks agreed to "bargain sell set over" to "George M. Swingle his heirs administrators. All of his oil and gas rite being the full half of his eighth interest, one sixteenth royalty to have and hold for ever all of the undivided (1/16) one sixteenth royalty and gas rite." (ECF No. 73-4, at 2). The language unambiguously communicates Meeks' intent to sell "All of his oil and gas rite", which was expressly defined as "being the full half of his eighth interest, one sixteenth royalty…all of the undivided (1/16) one sixteenth royalty and gas rite". In addition, within its payment schedule provisions, the Royalty Deed twice references royalty, "[s]aid undivided sixteenth royalty" and "[s]aid sixteenth royalty." Thus, there is no ambiguity that the sale was intended to transfer a defined 1/16 oil and gas royalty right to Swingle.

Next, in addition to finding no ambiguity as to the intended 1/16 oil and gas royalty interest, there is no ambiguity that the only interest sold to Swingle was the personal property royalty right to receive Meeks' defined royalty payments from the production of oil and gas. As discussed above, at the time of the Meeks to Swingle Royalty Deed, the only oil and gas interests that Meeks owned were personal property royalty interests under the South Penn Lease and a real estate possibility of reverter interest that would vest if the South Penn Lease terminated.

10

The language within the Meeks to Swingle Royalty Deed supports that only defined royalties were intended to be sold to Swingle.  The Article of Agreement was titled, "Royalty Deed," and the language within the document only refers to royalty interests.  It contains four express references to royalty; however, it does not refer to any possibility of reverter or reversionary interest.  Further, it applies the terms, "bargain sell and set over," which are consistent with intended sales of personal property.  In contrast, the Royalty Deed is devoid of real estate terms of conveyance, such as "transfer, demise, grant, or convey."  The terms, "bargain sell and set over," as used in the Meeks to Swingle Royalty Deed, are different from the terms Meeks applied within the South Penn Lease, "grant, demise, lease and let," to convey an oil and gas fee simple determinable real estate interest to South Penn.  The 1897 Royalty Deed's use of bargain, sell and set over to transfer royalty interests, rather than terms that convey real estate interests, supports that the intent was to sell only oil and gas royalty interests.  As such, there is no ambiguity that the interest bargained, sold and set over to George Swingle was the Meeks' defined oil and gas royalty interests from the oil and gas exploration and production that was taking place on the property.

A final assessment is to ascertain whether there is any ambiguity as to the duration and extent of the sale of the royalty interests to Swingle.  As discussed above, the Meeks' royalty interests, as personal property, were defined by the terms of the South Penn Lease.  The 1897 Royalty Deed bargained sold and set over to George Swingle certain of the Meeks' defined oil and gas royalty interests.  Said royalty interests were payable pursuant to the South Penn Lease.  The termination of said Lease was dependent upon the occurrence of circumstances as defined by the Lease.  If wells were drilled and production continued in paying quantities as per the terms of the lease, the lease could have continued in existence indefinitely.  In such case, the

11

Meeks' and Swingle's, or their respective successors-in-interest's, rights to receive oil and gas royalties could also have continued indefinitely. As such, the single reference to "for ever" within the Royalty Deed does not create any ambiguity as to the intended duration or type of property interest being sold. The Royalty Deed sold a personal property royalty interest to Swingle. It did not sell any real estate interest in the Meeks' possibility of reverter in the oil and gas estate.

Upon termination of the South Penn Lease, the Meeks' possibility of reverter interest in the oil and gas mineral estate reverted and vested the fee simple oil and gas mineral interest back to the Meeks and their heirs and successors-in-interest. Neither South Penn nor George Swingle owned any remaining mineral oil and gas estate or royalty interest. As George Swingle's successor-in-interest, JJK Mineral owns no property interest in the property's oil and gas estate. Therefore, the Defendants' Motion to Dismiss JJK Mineral's Count I, request for Declaratory Judgment, and Count II, Motion for Quiet Title, will be granted.

The defense also argues that JJK Mineral failed to plead sufficient allegations of adequate consideration to survive the present Motion to Dismiss. (ECF No. 78, at 10). JJK Mineral argues that it has pled sufficient facts establishing adequate consideration for the purposes of the Motion to Dismiss stage. (ECF No. 84, at 21). As the Court has determined that JJK Mineral has no property interest in the 236-acre tract, the defense's argument that JJK Mineral has failed to plead adequate consideration is not relevant to the decision in this case.

At Count III, JJK Mineral brings a claim against EQT and the Morris Defendants for unjust enrichment. (ECF No. 73, at 57). JJK Mineral explains in its Brief in Opposition to Defendants' Motion to Dismiss that its unjust enrichment claim is plead in the alternative to its claim of an ownership interest in the property's oil and gas rights. (ECF No. 84, at 21). Unjust

enrichment is essentially a claim in equity where a court implies a contract which requires a defendant to pay a plaintiff the value of a benefit conferred. *Styler v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993). In order to establish a claim for unjust enrichment, a plaintiff must show: (1) benefits conferred on the defendant by the plaintiff; (2) an appreciation of such benefits by the defendant; (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefits without the payment of value. *Id.* In order to satisfy the requirements of a claim for unjust enrichment, the plaintiff must show that the defendant "passively received a benefit that it would be unconscionable for her to retain." *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999).

In this case, it would be inappropriate for the Court to act in equity and change the terms of the 1897 Royalty Deed. It is clear by the language of the 1897 Royalty Deed that the Meeks only sold a 1/16 oil and gas royalty interest from oil and gas production under the South Penn Lease. When the South Penn Lease terminated, JJK Mineral no longer owned any royalty property right; thus, Defendants do not owe JJK Mineral any equitable value for any post-Lease termination oil and gas production on the property. The Defendants have not been unjustly enriched by JJK Mineral, and JJK Mineral's claim for unjust enrichment fails. The Defendants' Motion to Dismiss JJK Mineral's Count III, Unjust Enrichment claim, will be granted.

As regards JJK Mineral's Count IV, Accounting claim, because JJK Mineral's Count I, Declaratory Judgment claim, and Count II, Motion for Quiet Title, fail, JJK Mineral's Count IV, Accounting claim, also fails.

Because this decision rests upon the Court's legal interpretation of the 1897 Royalty Deed, amendment would be futile. Thus, the Court will not grant JJK Mineral leave to amend its Second Amended Complaint.

## IV. Conclusion

The Morris Defendants' Motions to Join in EQT's Motion to Dismiss Plaintiff's Second Amended Complaint and to Join in EQT's Supplemental Brief in Support of EQT's Motion to Dismiss will be granted.

The Defendants' Motion to Dismiss JJK Mineral's Second Amended Complaint will be granted. This case will be dismissed as to all counts.

A separate Order will follow.

Date: October 6, 2021

Marilyn J. Horan
United States District Judge